IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GARY HOOD, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) CIVIL ACTION NO. 2:20-CV-12953-DPH-EAS |
| vs. | ) |
| | ) |
| ARG RESOURCES, LLC | ) HON. DENISE PAGE HOOD |
| | ) |
| DEFENDANT. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**AMENDED COMPLAINT**

PLAINTIFF, GARY HOOD, by and through his attorneys, CARLA D. AIKENS, P.C., submit the following Amended Complaint against DEFENDANT ARG RESOURCES, LLC.

**JURY DEMAND**

COMES NOW PLAINTIFF, GARY HOOD, and hereby makes his demand for trial by jury.

**JURISDICTION**

1. At all times relevant to this complaint, Plaintiff Gary Hood was a resident of Wayne County in the State of Michigan.

2. Defendant ARG Resources, LLC., is a foreign profit corporation, with a continuous and systematic place of business maintained under the brand Arby's at 22820 Harper Avenue, St. Clair Shores, MI 48080.

3. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## VENUE

5. Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

6. In 2005, Plaintiff was hired to work at Arby's, the store which Defendant eventually purchased, for a position as a food retail worker.

7. In 2009, Plaintiff was promoted to the position of Operating Partner. However, that was position was later dissolved.

8. Plaintiff was later promoted to General Manager and was responsible for overseeing profit, labor, and food supplies, earning $55,000.00 annually.

9. Plaintiff was one of, if not the only, African American General Manager in his District.

10. Plaintiff excelled at his job and continued to work for the company for 15 years without incidence until 2019.

11. In March 2019, Jan Jeczen ("Jeczen"), a Caucasian female, was transferred from an Arby's location in Ohio to the St. Claire Shores location where Plaintiff was the General Manager.

12. Prior to Jeczen's transfer, the store operated with Plaintiff as the only General Manager, similar to other locations within the District.

13. It became apparent to Plaintiff that Jeczen was there to replace him as General Manager.

14. Jeczen began to target Plaintiff and criticize his work at every location, and reported

every minor incident to their supervisor, Renee Audit.

15. Renee Audit began to show favoritism to Jeczen.

16. Renee Audit changed Plaintiff's schedule and forced him to work the "night shift."

17. Plaintiff complained of the schedule change with his supervisor, Renee Audit, and his District Director, Eric Ballance.

18. Ms. Audit refused to make any accommodations for Plaintiff.

19. For years, Plaintiff worked in the store during the "day shift." It was only when Jeczen was transferred that his shift became an issue.

20. Renee Audit allowed Jeczen to work the "day shift" even though she did not have minor children and had less seniority than Plaintiff.

21. Other General Managers in the District were not forced to work the "night shift."

22. Most General Managers worked the same shift Plaintiff did prior to Jeczen's transfer.

23. Plaintiff explained to management that he had a minor child in his custody and could not work the night shift.

24. Management failed to take any actions to remedy the situation.

25. Female workers and General Managers with minor children were given scheduling preference and/or would be accommodated and allowed to work day shifts.

26. Plaintiff was denied the same accommodations.

27. With Jeczen at his location, Plaintiff began to be written up for minor things for which younger, Caucasian women were not written up.

28. For example, Renee Audit wrote Plaintiff up for approving time off for Jeczen because she failed to inform him that she was not entitled to or allowed to take vacation time.

29. Plaintiff was terminated on May 15, 2019.

30. Upon information and belief, Jeczen replaced Plaintiff as General Manager.

31. Following his termination, Plaintiff filed a charge of discrimination with the EEOC on the basis of his (1) sex/gender and (2) race.

32. On August 14, 2020, a notice of his right to sue Defendant was issued from the EEOC.

33. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT I
### HARASSMENT & DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")

34. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

35. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

36. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's skin color.

37. A respondeat superior relationship existed because Ms. Audit and Mr. Ballance had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

38. Plaintiff is an African-American male, and, as a result, is a member of a protected class pursuant to Title VII.

39. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class.

40. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

4

41. Plaintiff notified Defendant, through its agents, of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication.

42. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

43. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

44. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

45. Plaintiff requests the relief as described in the Prayer for Relief below.

## COUNT II
## HARASSMENT & DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

46. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

47. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of the ELCRA.

48. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to harass or discriminate against an employee because of their race or skin color.

49. A respondeat superior relationship existed because Ms. Audit and Mr. Ballance had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

50. Plaintiff is an African-American male, and, as a result, is a member of a protected class pursuant to ELCRA.

51. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class.

52. The communication and conduct were unwelcomed.

53. This unwelcomed conduct and communication was intended to or in fact did substantially interfere with Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

54. Plaintiff continually notified and complained to Defendant through its agents of the unwelcomed conduct or communication and Defendants failed to remedy the unwelcomed conduct or communication.

55. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

56. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III
## DISCRIMINATION ON THE BASIS OF AGE IN VIOLATION OF THE ELCRA

57. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

58. At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

59. Plaintiff was an African American man who was fifty-eight years old at the time of his termination.

60. Plaintiff had a minor child and was a single-father.

61. Plaintiff was older than majority of the other General Managers in his District, especially amongst those whom had minor children.

6

62. A respondeat superior relationship existed because Ms. Audit and Mr. Ballance had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

63. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to discriminate against an employee on the basis of their age.

64. The ELCRA makes it so that Plaintiff is a member of a protected class for the purpose of his age.

65. Plaintiff, like the other older employees, was being systematically fired, and less experienced younger employees were being hired to take his place.

66. Moreover, the owner, Mr. Dunn, was known to make comments about hiring younger and more energetic or vibrant employees; referring to this discrimination as a culture change at times.

67. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained losses of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

68. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

69. Plaintiff requests relief as described in the Prayer for Relief below.

### COUNT IV
### DISCRIMINATION/HARASSMENT ON THE BASIS OF SEX/GENDER IN VIOLATION OF TITLE VII

70. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

71. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

72. A respondeat superior relationship existed because Ms. Audit and Mr. Ballance had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

73. Defendant's conduct, as alleged herein, violated Title VII, which makes it unlawful to harass or discriminate an employee on the basis of their sex or gender.

74. Plaintiff is man, and, accordingly, and pursuant to Title VII, is protected against discrimination because of his sex.

75. Plaintiff was subjected to communication and conduct on the basis of his status as a member of this protected class including, but not limited to, being denied shift changes, being forced to work the night shift, which prevented him from properly caring for his minor child.

76. Defendant and their agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

77. Plaintiff notified Defendant and their agents of the unwelcomed conduct and communication, however, Defendant failed to remedy the same.

78. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment, as alleged in the statement of facts.

79. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

80. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

81. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## DISCRIMINATION/HARASSMENT ON THE BASIS OF SEX/GENDER IN VIOLATION OF THE ELCRA

82. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

83. At all material times, Plaintiff was an employee and Defendant was employer, and both were covered by, and within the meaning of, the ELCRA.

84. A respondeat superior relationship existed because Ms. Audit and Mr. Ballance had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

85. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee because of their sex or gender.

86. Plaintiff is a man, and, accordingly, is a member of a protected class for the purposes of the ELCRA.

87. Plaintiff was subjected to communication and conduct on the basis of his status as a member of this protected class including, but not limited to, being denied shift changes, being forced to work the night shift, which prevented him from properly caring for his minor child.

88. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

89. Plaintiff continually notified Defendant and its agents of unwelcomed conduct and communication; however, Defendant failed to remedy the same.

90. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

91. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

92. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI
## RETALIATION IN VIOLATION OF TITLE VII

93. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

94. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

95. A respondeat superior relationship existed because Ms. Audit and Mr. Ballance had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity, as alleged in the statement of facts.

96. Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

97. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to, when he consistently and continually informed management of the discriminatory scheduling against him in comparison to his female coworkers with children.

98. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because Plaintiff would consistently address the scheduling issues with management and requests management to provide a solution.

99. After Plaintiff engaged in a protected activity, Defendant's agents thereafter harassed Plaintiff and took several adverse employment actions because of that activity, as alleged in the statement of facts and herein, subjecting Plaintiff to severe and pervasive retaliatory harassment by a supervisor, culminating all the way to the termination of Plaintiff.

100. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

101. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

102. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

103. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

104. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VII
## RETALIATION IN VIOLATION OF THE ELCRA

105. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

106. At all material times, Plaintiff an employee, and Defendant his employer, were covered by, and within the meaning of, the ELCRA.

107. A respondeat superior relationship existed because Ms. Audit and Mr. Ballance had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity, as alleged in the statement of facts.

108. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

109. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to, when he consistently and continually informed management of the discriminatory scheduling against him in comparison to his female coworkers with children

110. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because Plaintiff would consistently give specific knowledge of issues directly to Ms. Audit and Mr. Balance.

111. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

112. Plaintiff notified Defendant's agents of the unwelcomed conduct or communication; however, Defendants failed to remedy the same.

113. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

114. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

115. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VIII
## WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY AS TO DEFENDANT EMPLOYER

116. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

117. It is the longstanding public policy of the State of Michigan that there are three exceptions to the employment at-will doctrine, and an employer can be found to be liable for wrongful discharge, where:

1) Legislative statements prohibiting the discharge, discipline or other adverse treatment of employees who act in accordance with a statutory right or duty;

2) The alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course or employment; and

3) The reason for the discharge was the employee's exercise of a right conferred by a

well-established legislative enactment.

118. Plaintiff's discharge came as the result of the fact that he consistently stood up for the rights that were promised to him in different civil rights statutes and rules insisting that Defendant maintain an establishment that was free from sex/gender and racial discrimination.

119. These rights are conferred to Plaintiff by well-established legislative enactments, specifically including, but not limited to, Title VII & the ELCRA.

120. Defendant retaliated against Plaintiff for attempting to protect his rights as laid out in these statutes.

121. As a result of Defendant's actions, and consequent harms caused, Plaintiff has suffered such damages in an amount to be proven at trial.

122. Plaintiff requests relief as described in the Prayer for Relief below.

123. As such, Plaintiff is entitled to relief as set forth below.

## **RELIEF REQUESTED**

PLAINTIFF, GARY HOOD, respectfully request that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Exemplary damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: February 22, 2021

                Respectfully Submitted,

        /s/ Carla D. Aikens
        Carla D. Aikens (P69530)
        CARLA D. AIKENS, P.C.
        *Attorneys for Plaintiff*
        615 Griswold Ste. 709
        Detroit, MI 48226
        carla@aikenslawfirm.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 22, 2021, Plaintiff's counsel caused a true and correct copy of the foregoing Amended Complaint to be served on the following attorneys of record in this matter via the Court's electronic filing system:

    Brett E. Coburn
    ALSTON & BIRD LLP
    One Atlantic Center | 1201 West Peachtree Street
    Atlanta, GA 30309-3424
    404.881.4990 direct
    404.253.8898 fax
    brett.coburn@alston.com
    *Attorney for ARG Resources, LLC*

    James F. Hermon (P53765)
    DYKEMA GOSSETT PLLC
    400 Renaissance Center
    Detroit, MI 48243
    Telephone: (313) 568-6800
    jhermon@dykema.com

        */s/ Patricia Ramirez*
        Patricia Ramirez