UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY HOOD,

                Plaintiff,                CASE NO. 20-12953

v.                                  HON. DENISE PAGE HOOD

ARG RESOURCES, LLC,

                Defendant.

_____/

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT [ECF No. 20]
## and GRANTING MOTIONS TO STRIKE [ECF Nos. 27, 29]

## I.    INTRODUCTION

On November 2, 2020, Plaintiff filed the instant lawsuit asserting eight causes of action, including: (a) race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Elliott-Larsen Civil Rights Act ("ELCRA") (Counts I and II); (b) gender discrimination under Title VII and the ELCRA (Counts IV and V); (c) age discrimination under the ELCRA (Count III); (d) retaliation under the Title VII and the ELCRA (Counts VI and VII); and (e) wrongful discharge under Michigan public policy (Count VIII). ECF No. 1.  On December 16, 2021, Plaintiff added a claim for disability discrimination under the Michigan Persons with

1

Disabilities Civil Rights Act ("PWDCRA") (Count VIII, with the wrongful discharge under Michigan public policy claim becoming Count IX). ECF No. 16.

On February 18, 2022, Defendant filed a Motion for Summary Judgment, ECF No. 20, and the parties have fully briefed the Motion. Each party then filed a Motion to Strike, ECF Nos. 27 (Defendant) and 29 (Plaintiff). A hearing on the Motions was held on July 14, 2022. The Motion for Summary Judgment is granted and both Motions to Strike are granted.

## II.   BACKGROUND

Plaintiff began working for Defendant in 2005, initially as an Operating Partner at the Harper Avenue restaurant (store) in St. Clair Shores, Michigan. The current Senior Director of Operations Eric Ballance ("Ballance") interviewed and hired Plaintiff in 2005, and Ballance served as Plaintiff's second line supervisor for much of Plaintiff's career. Plaintiff exceeded Ballance's expectations in the interview, and for the first eight years (2005 through 2013), Plaintiff met or exceeded expectations. In 2014, he was promoted to General Manager for the Harper Avenue store, and he was the only African American General Manager in the district.

In November 2016, Renee Audet became the Area Supervisor for Defendant, which included the Harper Avenue store. Plaintiff testified that, around that time, Defendant staffed the Harper Avenue store with employees who had known

performance issues and refused to follow the rules.  Plaintiff also states that Audet micromanaged him.

In 2017, Plaintiff suffered a stroke. He informed Ballance and Audet about his stroke and took time off work.  Plaintiff did not ask for any accommodation upon returning to work after the stroke (or at any time thereafter), and Defendant did not offer Plaintiff any accommodation related to Plaintiff's stroke.

In February 2019, Jan Jeczen, a white woman, transferred to the Harper Avenue store in February of 2019.  Jeczen was hired as a co-General Manager, as she had been a General Manager for Defendant at an Ohio store. Plaintiff remained in charge of the Harper Avenue store.  Plaintiff claims that numerous issues immediately arose, including that Audet listened only to Jeczen and not to him. About this time (March 14, 2019), Plaintiff emailed Defendant to remind Defendant that his schedule was to be accommodated so that he did not work Saturdays while his son was in school.  Defendant refused to schedule Defendant off on all Saturdays.

On March 29, 2019, Audet, supported by Ballance and Brown, issued Plaintiff a Final Written Warning for violating Defendant's policies.  Plaintiff had given Jeczen paid time off ("PTO") that was not requested.   On April 9, 2019, Plaintiff received another Final Written Warning for violating several other Company standards, including not submitting performance appraisals for his team members or

shift managers (which were more than six weeks overdue), and not completing multiple other General Manager tasks. By that time, Plaintiff had only met one of the nine expectations documented by Audet in their March 5th meeting. Ballance, with Audet, personally met with Plaintiff to issue and discuss the Final Written Warning.   Ballance reviewed the expectations with Plaintiff, again, and unequivocally instructed him that he would be terminated if he did not make meaningful improvements in his performance. ECF No. 20, Ex. A at 101.

On or around May 3, 2019, Audet performed an Outlier AOR Audit at the Harper Avenue store. In addition to cleanliness and food safety issues, she noted that many Company Systems – including prep sheets, beef sheets, and operations checklists – were still not being used or maintained daily.  She also noted that training had not been completed for new-hires who had been working for over six weeks, and that Plaintiff had failed to accomplish several of the other tasks and implement the Company Systems that she had documented and reviewed with him over the last year or more.  Of the nine specific action items that were documented and communicated to Plaintiff on March 5th and April 9th, he had met only two. Around this time, Plaintiff scheduled a minor to work during hours that violated child labor laws, and Plaintiff had failed to schedule himself for a required training.

For all these reasons, on or before May 15, 2019, Ballance made the decision to terminate Plaintiff's employment. The following morning, on May 16, 2019, Ballance and Audet met with Plaintiff to communicate his termination for continued failure to follow Company standards. After Plaintiff's termination, Ms. Jeczen continued as the sole GM of the Harper Avenue store.

Plaintiff submitted an exhibit that reflected emails, notes and other communications related to him, prepared by Brown and Audet, from March 27, 2019 through May 16, 2019. ECF No. 25, Ex. 16.  Plaintiff believes that Jeczen had it out for Plaintiff.  Plaintiff maintains that Jeczen asked white employees if Plaintiff treated them differently and evaluated how the stroke may have affected his performance. ECF No. 25, Ex. 16 at ARG 435. Plaintiff communicated to Ballance that he believed he was being picked on and harassed, even noting that Jeczen was trying to have white employees state he was racist.  He communicated to Ballance that Jeczen, Plaintiff's subordinate who wanted his job and eventually received it, was sending information to Defendant's management about alleged misconduct by Plaintiff. *Id*. at ARG 432. Ballance stated at his deposition that Brown had Plaintiff on the "outlier list" for "two and a half years," which Plaintiff asserts is "coincidentally" exactly the time period that Ballance and Brown noted when he had the stroke. ECF No. 25, Ex. 3 at 97.

5

## III.   APPLICABLE LAW

### A. Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## B. Discrimination Laws – Generally

Claims of race discrimination, gender discrimination, age discrimination, and retaliation brought under the ELCRA, as well as disability discrimination claims brought under the PWDCRA, are analyzed under the same evidentiary framework as their Title VII, ADEA, and ADA counterparts. *See, e.g., Hardcastle v. Ctr. for Family Health*, No. 17-12491, 2019 U.S. Dist. LEXIS 52636, at **15-16, **26- 28 (E.D. Mich. Mar. 28, 2019) (Hood, C.J.) (citing *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999)); *Ragland v. Von Maur, Inc.*, No. 08-11783, 2010 U.S. Dist. LEXIS 28644, at *9 n.6-7 (E.D. Mich. Mar. 24, 2010) (Hood, C.J.).

A plaintiff first must raise an inference of discrimination through the establishment of a prima facie case of discrimination or retaliation. *Hardcastle*, 2019 U.S. Dist. LEXIS 52636, at **26-28. If a plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id*. at *27. "Once the defendant has provided a legitimate, nondiscriminatory explanation, the burden shifts back to the plaintiff to show that the defendant's stated reasons were pretext

for discrimination." *Hughes v. Henry Ford Health Sys.*, No. 17-10436, 2018 U.S. Dist. LEXIS 139594, at *20 (E.D. Mich. Aug. 17, 2018). "Throughout this burden-shifting approach, the plaintiff continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Id*. (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006)).

## IV.   ANALYSIS OF SUMMARY JUDGMENT MOTION

On April 2, 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights.  Plaintiff alleged discrimination on the basis of his race and sex, but he did not allege disability discrimination. On August 14, 2020, the EEOC issued a no cause determination.  On November 2, 2020, Plaintiff filed this action, but he did not add the disability discrimination claim until December 16, 2021.

In his response brief, Plaintiff claims Defendant discriminated against him in three primary ways: (1) treating him as a second-class citizen; (2) treating white employees more favorably; and (3) terminating his employment.  In his arguments, the first two manners of discrimination generally are intertwined.

### A. Race and Gender Discrimination Claims

Defendant does not challenge that Plaintiff has established a *prima facie* case of race and gender discrimination.   Defendant maintains that it has offered

legitimate, non-discriminatory reasons for its actions toward Plaintiff, including terminating him for cause.  The Court agrees, as there is evidence that: (1) the Harper Avenue store consistently ranked at the bottom of stores in the Area; (2) Plaintiff had failing performance reviews in 2016, 2017, and 2018; (3) deficient performance as the General Manager was deficient with respect to staffing, scheduling, development and training, and utilizing Defendant's Systems; (4) Plaintiff failed to improve after two formal written warnings; (5) Plaintiff failed to train new hires and comply with Defendant's standards or Systems by May 2019; (6) Plaintiff scheduled Jeczen for PTO hours when Jeczen did not request them; and (7) Plaintiff scheduled a minor to work in violation of child labor laws.  In Plaintiff's 2016, 2017, and 2018 End of Year Performance Appraisals, he received failing scores of 2.89, 2.17, and 2.09 (out of 5), respectively.  In March and September 2016, the Harper Avenue store received C and F ratings in multiple categories, and it was consistently among the two worst performing stores in the Area in 2016-2018.  The Court notes that Plaintiff's response does not challenge the accuracy of any of these events or circumstances that preceded Defendant's decision to terminate him.

The Court finds that Defendant had legitimate, nondiscriminatory reasons for requiring Plaintiff to work a schedule that included closing and weekend shifts, the types of shifts Plaintiff argues constitute evidence of race and gender discrimination.

There is undisputed evidence that all General Managers in the Area were required to work a schedule that included some dinner, closing, and weekend shifts. The basis for that was that Defendant believed it important for General Managers, including Plaintiff, to observe the store and the General Manager's team at peak times and to use those times to train and develop assistant managers and shift managers. Plaintiff has claimed that he had to work a different schedule than other General Managers, but he has offered no evidence to support that claim.

Plaintiff argues that those reasons were mere pretext for race and gender discrimination.  A plaintiff may show pretext by proving: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the employer's action; or (3) that they were insufficient to motivate the employer's action. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Plaintiff argues, that in a light most favorable to him, there are three reasons the evidence demonstrates that Defendant's stated reasons were mere pretext for discrimination: (a) he performed his duties for more than 12 years before Defendant imposed formal discipline against him; (b) Defendant decided to "hold [him] accountable" only after he suffered a stroke; and (c) Defendant held Plaintiff to different standards and expectations than his white counterparts.

In support of his argument, Plaintiff almost uniformly relies upon his deposition testimony and/or affidavit filed with his response brief to support his contention that the work environment was not free of racial harassment and that his work performance was interfered with, which created a hostile work environment. Plaintiff claims that Jeczen (and Audet) discriminated against him, giving him menial tasks and asking him to do things not given to others. He claims that he was reprimanded for things for which a white female working next to him doing the same thing would not be reprimanded. In reviewing the briefs and the record, however, there is no evidence that any other identified, comparable person was a General Manager or any type of manager.

Plaintiff complains that he was saddled with employees known to be problematic to set him up for failure, but the deposition language to which he cites (ECF No. 25, Ex. 2 at 68-69) does not address this issue. He claims he was subjected to a pattern of mistreatment and unrealistic deadlines by his supervisor (Audet) over the two-year period, despite him making every effort to prove himself. He argues that he was not allowed to make any mistakes. *Id.* at 147, 150-51. Plaintiff also argues that Audet (Jeczen) set unrealistic work expectations, citing ECF No. 25, Ex. 2 at 147, but the cited testimony does not mention deadlines or unrealistic expectations.

With respect to alleged racial discrimination, Plaintiff denied that Jeczen made any racist comments to him or that he overheard, but he said he heard through the grapevine that she made comments to others, including: "I am not working for the black man. Plaintiff testified that Jeczen would tell him to mop the floor or take out the trash. He also claims that he had to work a schedule that other General Managers were not required to work, but he did not specify any particular actions or events to support his contentions that his schedule or termination were based on his race. ECF No. 24, PageID.1252 and Ex. 2 at 144-160.

With respect to gender discrimination, Plaintiff believes Defendant treated him, an African American male, differently when it came to his child, as compared to the women in the company. ECF No. 25, Ex. 2 at 145. He states that, in the few months prior to his termination, Plaintiff was asked to work on Saturdays even though he had previously stated he could not work that day while his son was in school. Citing ECF No. 25, Ex. 18. He (confusingly) argues that employees "who were not African-American males" with school age children were allowed to care for their children. Ex. 2 at 145, Ex. 18. Plaintiff has not offered any evidence -- or even the names of – any other employees with school age children who were allowed to care for their children, as Plaintiff contends; in fact, Plaintiff's counsel was asked to specify any white female(s) or other employee(s) who were treated differently and

failed to provide the Court with any names.  And, there is no evidence that: (a) any other General Manager; (b) any female employee; or (c) any white employee was granted the opportunity to have a schedule like the one Plaintiff desired.

Plaintiff argues that one of the stated reasons for terminating him (giving PTO to someone who had not requested it) "is not a reasonable basis to terminate an employee of nearly 15 years" and shows that he was being set-up for termination. He argues that he complained about this harassment to Human Resources and Balance about issues at work but that Defendant did not investigate.  Citing ECF No. 25, Ex. 3 at 97-99.  Balance's deposition testimony cited by Plaintiff, however, reflects that Ballance first was notified at some point on May 16, 2019.  This was the day Ballance terminated Plaintiff.  Plaintiff left a voicemail regarding harassment on Brown's voicemail while Ballance was en route to the termination meeting. Ballance was not involved in any investigation regarding Plaintiff's harassment claims.

For the reasons set forth above, Defendant's Motion is granted with respect to Plaintiff's race and gender discrimination claims and Counts I, II, IV, and V are dismissed.

## B. Age Discrimination Claim

Under the ELCRA, to establish a prima facie case of age discrimination based on his termination, Plaintiff must show that: (1) he is a member of a protected class; (2) that he was discharged; (3) that he was qualified for the position; and (4) that he was replaced by a younger person. *See, e.g., Meagher v. Wayne State Univ.*, 222 Mich. App. 700, 711 (1997).  The Court finds that Plaintiff has not identified any appropriate younger person who allegedly replaced him.  Plaintiff was 57 or 58 when he was terminated. Jeczen, who replaced Plaintiff as the General Manager at the Harper Avenue store, was 56 at the time she replaced him.  Under Michigan law, a one-year age difference (particularly when both persons are in the protected class), is not indicative of age discrimination. *See, e.g., Piper v. Michigan State Univ.*, 1999 Mich.App.LEXIS 405, at *10 (Feb. 26, 1999).  Plaintiff also has failed to present any evidence that any other comparable General Manager was treated more favorably in any respect.

Even if the Court did find that Plaintiff established a *prima facie* case of age discrimination, Defendant has offered legitimate, non-discriminatory reasons for its actions with respect to Plaintiff.  Plaintiff has not, however, offered any argument about how the actions of Defendant, including Balance, Audet, or Brown, show that Defendant's explanations for its actions were pretext for discrimination.

Defendant's Motion for Summary Judgment is granted with respect to Plaintiff's age discrimination claim at Count III.

## C. Retaliation Claims

Defendant first argues, and the Court agrees, that Plaintiff's Title VII retaliation claim fails because Plaintiff did not exhaust his administrative remedies, as he did not raise any allegations of retaliation in his EEOC charge. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002)); *Thomas v. Great Lakes Water Auth.*, No. 18-13033, 2020 U.S. Dist. LEXIS 171891, at *24 (E.D. Mich. Sept. 21, 2020) (dismissing Title VII retaliation claim where "[t]here is simply nothing in Thomas's EEOC complaint that would prompt an EEOC investigation into possible retaliation").

Plaintiff's retaliation claim also is dismissed on the merits because he cannot establish a prima facie case. To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in a protected activity under Title VII or the ELCRA; (2) his employer knew that he exercised that right; (3) his employer took an adverse employment action against him or he was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the

protected activity and the adverse employment action or harassment. *Garner v. Cuyahoga Cnty. Juv. Ct.*, 554 F.3d 624, 639 (6th Cir. 2009).

Defendant contends that Plaintiff cannot satisfy the first element because he did not engage in any protected activity.  In his Amended Complaint, Plaintiff alleges that "he consistently and continually informed management of the discriminatory scheduling against him in comparison to his female coworkers with children." ECF No. 16, PageID.103-04 (¶¶ 103, 115).  In his response brief, he states that he "has at least presented evidence to survive summary judgment that he was fired in retaliation for being perceived as having diminished abilities as a result of his stroke, and for asking for an accommodation of his schedule due to having a child, such that he could not work weekends as he requested." ECF No. 24, PageID.1256.  Plaintiff cites Ballance's deposition testimony that "part of the reason why [Defendant] fired [Plaintiff]" was because Plaintiff "wasn't working the expected schedule of a general manager, that's correct." Ballance testified about a March 28, 2019 followup evaluation where it was determined Plaintiff had worked one Saturday with zero closes and a May 3, 2019 followup evaluation where it was determined Plaintiff had worked "some Saturdays, zero closes and no dinners."

Plaintiff also states that he had discussed with Audet that he had requested the accommodation of no Saturdays when his child was in school, which is evidenced

in the email correspondence between he and Audet. *See* ECF No. 24, Ex. 18. On March 14, 2019, Audet emailed Plaintiff that, per their discussions, Plaintiff had to work two Saturdays per period and at least 1-2 closes per period, and that his results did not warrant working only Monday through Friday, "nor is that [Defendant's] standard GM schedule." *Id.* Plaintiff responded, "We discuss[ed] that when Breadon got out for the summer I would have to work some Saturdays and take Wednesdays off!  I agreed with you and I did that last year.  I saw that Jan sent you the schedule[] last week!" *Id.*  For these reasons, Plaintiff argues that Defendant admits that his inability to work weekends formed part of the basis of his termination.

Even if that is true, however, the Court concludes that Plaintiff has not set forth any protected activity in which he engaged.  Plaintiff's requests that he not work on weekends does not constitute protected activity, as seeking the weekends off has nothing to do with his race, gender, age, or disability.  Plaintiff has offered no evidence that any other person (especially a General Manager and/or a woman) was permitted weekends off due to child-care needs.  Plaintiff's statement that "he was fired in retaliation for being perceived as having diminished abilities as a result of his stroke" does not constitute protected activity, as it occurred post-termination. There is no evidence that Plaintiff made any demands due to his stroke, nor is there any evidence that Defendant terminated him for having a stroke.  To the contrary,

Defendant continued to employ Defendant as a General Manager for more than two years after the stroke.

Plaintiff contends that he made complaints to Audet about Jeczen picking on him. ECF No. 20, Ex. A at 182-83) ("I told her she was picking with me for various reasons."). He concedes, however, that he never told Audet he felt he was being treated differently based on his race, gender, age, or disability, nor did he ever make any such complaints to Ballance. *Id.* at 183-84; Ex. B at 28; Ex. C. at 49.  It is well established that "[g]eneral complaints do not constitute protected activity when the plaintiff does not object to discriminatory conduct based on his membership in a protected class." *Barnes v. United Parcel Serv.*, No. 19-10406, 2020 U.S. Dist. LEXIS 259912, at *5 (E.D. Mich. Nov. 9, 2020) (citing *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 511 (6th Cir. 2016)).

For the foregoing reasons, the Court finds that Plaintiff cannot establish a *prima facie* case of retaliation and dismisses Counts VI and VII.

### D. PWDCRA Claim

42 U.S.C. §12112(a) provides:

No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

The statute further defines the term "discriminate against a qualified individual with a disability" to include "not making reasonable accommodations to an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship…" 42 U.S.C. §12112(b)(5)(A).

The standards for establishing a prima facie case for disability discrimination pursuant to the PWDCRA and the ADA are essentially the same and "claims under both statutes are generally analyzed identically." *Cummings v. Dean Transp., Inc.*, 9 F.Supp.3d 795, 804-05 (E.D. Mich. 2014). To establish a prima facie case under the ADA for failure to accommodate, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Judge v. Landscape Forms, Inc.*, 592 F.App'x 403, 407 (6th Cir. 2014) (internal citation omitted); *see also Burdett-Foster v. BCBS of Mich.*, 574 F.App'x 672, 680 (6th Cir. 2014); *Johnson v. Cleveland City Sch. Dist.*, 443 F.App'x 974, 982-83 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)); *Spiteri v. AT & T Holdings, Inc.*, 40 F.Supp.3d 869 (E.D. Mich. 2014).

As part of his prima facie case, the plaintiff "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 870 (6th Cir. 2007) (quoting *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004)). *See also Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010); *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002); *Walsh v. United Parcel Serv.*, 201 F.3d 718, 725 (6th Cir. 2000) ("The burden of establishing that the proposed accommodation is reasonable remains with the plaintiff."). "[T]he inquiry into reasonableness requires [] a factual determination untethered to the defendant employer's particularized situation." *Walsh*, 201 F.3d at 726 n.3 (internal quotation marks omitted).

In this case, Plaintiff has failed to proffer evidence to support his disability claim based on failure to accommodate. First, there is no evidence that he was disabled under the ADA (PWDCRA). Plaintiff has shown that he suffered a stroke but not that he was impaired as a result of the stroke. Plaintiff has not established that he was substantially limited in a major life activity unrelated to his ability to perform his job. *See Harris v. Elec. Data Sys. Corp.*, 1996 U.S. App. LEXIS 6109, at *25 (6th Cir. Mar. 6, 1996) (PWDCRA only covers those persons whose disability is unrelated to the ability to perform his job). Second, although his supervisors knew

of the stroke, there is no evidence that Plaintiff told anyone at Defendant – or that any of Plaintiff's supervisors (Ballance, Audet, and Brown) were aware – that Plaintiff was impaired or disabled as a result of his stroke.   Third, there is no evidence that Defendant treated Plaintiff differently because of the stroke. ECF No. 20, Ex. A at 174 ("When I had my stroke I didn't take any extra time off or anything for work.   I went right back to work.   I was treated as everything like it never happened").   Fourth, Plaintiff admits he never requested any accommodation from Defendant in connection with his stroke, ECF No. 20, Ex. A at 33, which was confirmed by Audet, Ballance, and Brown.   For these reasons, the Court finds that Plaintiff cannot establish a prima facie PWDCRA claim.

Even if Plaintiff can establish a prima facie case, Defendant has offered legitimate, non-discriminatory reasons for disciplining and terminating Plaintiff, which means that Plaintiff would need to show that those reasons were mere pretext for disability discrimination.

Plaintiff suggests that his past performance, including his qualifications and promotions, coupled with a lack of contemporaneous criticism until after his stroke, could allow a fact finder to determine that Defendant's proffered reason for termination had no basis in fact or was insufficient to motivate the decision to discharge him. Citing *Cicero v. Borg-Warner Auto.*, 280 F.3d 579 (6th Cir. 2002).

He argues that the delay in discipline also establishes pretext, particularly as it relates to Defendant now claiming that there were issues as long ago as 2009 but no formal discipline was imposed until after his stroke.   In Plaintiff's words, why did Defendant wait so long to take corrective action? Citing *Marzano v. Computer Science Corp.*, 91 F.3d 497, 509-10 (3rd Cir. 1996).  If Plaintiff has established a prima facie case, then he might be able to show pretext.

For the reasons stated above, the Court grants Defendant's motion to dismiss Plaintiff's PWDCRA claim in Count VIII.

### E. Wrongful Discharge in Violation of Michigan Public Policy

In Michigan, at-will employees are terminable at any time and for any reason, or no reason, unless that termination was contrary to public policy. *Kimmelman v. Heather Downs Mgmt. Ltd.*, 278 Mich. App. 569, 572-73 (2008). "Public policy" proscribing termination of at-will employment is "most often" used in three situations: (1) "adverse treatment of employees who act in accordance with a statutory right or duty"; (2) an employee's "failure or refusal to violate a law in the course of employment"; or (3) an "employee's exercise of a right conferred by a well-established legislative enactment." *Id*.

The Court finds that Plaintiff's public policy claim fails for two reasons.  First, as Defendant contends and Plaintiff acknowledges, he does not fall into any of those

three categories. ECF No. 20, PageID.175; ECF No. 24, PageID.1257.  Second, courts in Michigan have held, that "[w]here a statute confers upon a victim of retaliation the right to sue, that person may not also assert a claim of discharge in violation of public policy." *Vagts v. Perry Drug Stores, Inc.*, 204 Mich. App. 481, 485 (1994) (citing *Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692, 694-95 (1982)). Accordingly, Plaintiff's wrongful termination claim is foreclosed by his ability to sue under the ELCRA. *See e.g., Abdullattief v. St. John Hosp. & Med. Ctr.*, No. 2:07-cv-15426, 2009 U.S. Dist. LEXIS 135285, at *20 (E.D. Mich. June 26, 2009) ("The Michigan Supreme Court has found that claims of retaliation based on public policy are only permitted when there is no statutory prohibition against the retaliation. Under the [ELCRA] an employer is prohibited from retaliating or discriminating against a person who has opposed any violation of the act. Therefore, Plaintiff's exclusive remedy is to bring a claim of retaliation under the applicable state statute, and his public policy claim is dismissed."); *Guilbeaux v. City of Detroit*, No. 5:19-cv13728, 2020 U.S. Dist. LEXIS 249872, at *18 (E.D. Mich. Nov. 23, 2020).

The Court grants Defendant's summary judgment motion with respect to Plaintiff's public policy claim and dismiss Count IX of the Second Amended Complaint.

23

## V.     ANALYSIS OF MOTIONS TO STRIKE

In his response brief, Plaintiff attached an Affidavit attesting to certain matters.  Defendant has moved to strike Plaintiff's Affidavit.[1]  In its reply brief, Defendant attached two Declarations (Tresa Brown and Renee Audet).  The Court finds that none of the three documents were appropriate or necessary.  Plaintiff did not comply with the technical requirements of 28 U.S.C. § 1746, and he made statements in the Affidavit that contradicted his sworn deposition testimony.  The Declarations of Brown and Audet include new information that was not previously included in Defendant's Motion for Summary Judgment.  Accordingly, the Court grantS both Motions to Strike and strikeS the Affidavit of Plaintiff and the Declarations of Brown and Audet that are attached to Defendant's reply brief.

## VI.    CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment [ECF No. 20] is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Strike [ECF No. 27] and Plaintiff's Motion to Strike [ECF No. 29] are GRANTED.

---

[1] Defendant also asks that the Court strike portions of Plaintiff's response brief because they allegedly mischaracterize record evidence.  The Court declines that request, as the record speaks for itself and the Court is capable of delineating whether citations or representations are accurate.

IT IS FURTHER ORDERED that Plaintiff's cause of action is DISMISSED

WITH PREJUDICE, and judgment shall be entered separately and accordingly.

IT IS ORDERED.

Date: July 19, 2022                     s/Denise Page Hood                     
                                        DENISE PAGE HOOD
                                        UNITED STATES DISTRICT JUDGE